United States Bankruptcy Court
District of Maryland

In re: Kesa LLC
Debtor

Case No. 26-19154-MCR
Chapter 11

# CERTIFICATE OF NOTICE

District/off: 0416-0 | User: admin | Page 1 of 3
Date Rcvd: Nov 20, 2026 | Form ID: pdfall | Total Noticed: 46

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Nov 22, 2026:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| db | + | Kesa LLC, 900 Premium Outlets Blvd, Hagerstown, MD 21740-9540 |
| cr | + | Gable Signs, c/o Paul Sweeney, Esquire, YVS Law, LLC, 185 Admiral Cochrane Drive, Suite 130, Annapolis, MD 21401-7582 |
| cr | + | Outlet Village of Hagerstown Limited Partnership, 225 W. Washington Street, Indianapolis, IN 46204, UNITED STATES 46204-3435 |
| 33362462 | + | A.G. Adjustments Ltd, PO Box 9090, Melville, NY 11747-9090 |
| 33416215 | + | Ashley Stuckey, 11210 Youngstoun Drive Apt. 915, Hagerstown, MD 21742-8166 |
| 33362463 | + | Beatrice Fomumen, 19 Observation Ct Apt 304, Germantown, MD 20876-6413 |
| 33362465 | + | Business & Technology Law Group, 6310 Hillside Court, Suite 160, Columbia, MD 21046-1081 |
| 33362466 | + | Campbell Sales Group Inc., 2118 Mercantile Dr., Leland, NC 28451-4103 |
| 33427465 | + | Campbell Sales Group, Inc. t/a Leather Italia USA, P.O. Box 93661, Atlanta, GA 31193-0001 |
| 33393785 | + | Columbia Gas of Maryland, PO Box 70322, Philadelphia PA 19176-0322 |
| 33362469 | + | Continental Furniture Brands LLC, P.O. Box 836, Pontotoc, MS 38863-0836 |
| 33393786 | + | Felix & Frances Guzman, 128 LOUDON RD, Mercersburg, PA 17236-1720 |
| 33362470 | + | Furniture Values International LLC, 601 North 75th Avenue, Phoenix, AZ 85043-2111 |
| 33407025 | + | Furniture Values International, LLC, 601 N. 75th Avenue, Phoenix, AZ 85043-2111 |
| 33362471 | + | Gable Signs & Graphics, Inc., 7440 Fort Smallwood Rd, Baltimore, MD 21226-1973 |
| 33362472 | + | Hagerstown Premium Outlets LLC, 225 W Washington St, Indianapolis, IN 46204-3435 |
| 33412220 | + | High Rock Studio, Inc., C/o James M. Hoffman, Esq., Offit Kurman, P.A., 7501 Wisconsin Ave, Suite 1000W, Bethesda, MD 20814-6604 |
| 33362473 | + | HighRock Studios Inc, 20140 Scholar Drive, Suite 316, Hagerstown, MD 21742-6507 |
| 33362474 | + | Hooker Furnishing Corp, PO Box 4708, Martinsville, VA 24115-4708 |
| 33387634 | + | Hooker Furnishing Corporation, 440 E. Commonwealth Boulevard, Martinsville, WV 24112-2040 |
| 33362475 | + | Intercon Inc., 635 N Billy Mitchell Rd, Salt Lake City, UT 84116-3090 |
| 33417244 | + | Kesa LLC dba Tim's Furniture Mart, 900 Premium Outlets Boulevard, Hagerstown, MD 21740-9540 |
| 33362477 | + | Kiet Anh Nguyen, 20108 Mackintosh Ln #31, Germantown, MD 20876-2706 |
| 33362478 | + | Kind & Dashoff, 1 Church Ln, Pikesville, MD 21208-3709 |
| 33362480 | + | MASSA GALLERY CORP, 118 Tuckahoe Rd, Sewell, NJ 08080-3836 |
| 33362479 | + | Malouf, 1525 W 2960 S, Logan, UT 84321-5798 |
| 33393787 | + | McNamee Hosea, 6404 Ivy Ln Ste 820, Greenbelt, MD 20770-1416 |
| 33437331 | + | Outlet Village of Hagerstown LP, c/o Venable LLP, Attn: Laura S. Bouyea, 750 E. Pratt Street, Suite 900, Baltimore, MD 21202-3157 |
| 33437332 | + | Outlet Village of Hagerstown LP (by Receiver), c/o Venable LLP, Attn: Laura S. Bouyea, 750 E. Pratt Street, Suite 900, Baltimore, MD 21202-3157 |
| 33362481 | + | Revolutionary Retail, 7353-A West Friendly Ave, Greensboro, NC 27410-6233 |
| 33387633 | + | Richard M. Kind, Esquire, Kind & Dashoff, LLC, One Church Lane, Baltimore, MD 21208-3709 |
| 33393788 | + | Samir Abu Ajaj, 25468 Hopton house Terrace, Chantilly VA 20152-5817 |
| 33362483 | + | Setliff Law PC, 4940 Dominion Blvd, Glen Allen, VA 23060-6766 |
| 33362484 | + | Tawfik Almareh, 123 Noels Pl, Tappahannock, VA 22560-5080 |
| 33426357 | + | The CIT Group Commercial Services Inc., 134 Wooding Ave, Danville, VA 24541-3763 |
| 33362485 | + | Thompson International Inc., 635 N Billy Mitchell Rd, Suite B, Salt Lake City, UT 84116-3090 |
| 33364914 | + | Thomson International Inc dba Westwood Design, 635 N Billy Mitchell Rd, Salt Lake City, UT 84116-2979 |
| 33362487 | + | Waleed Alashmali, 123 Noels Pl, Tappahannock, VA 22560-5080 |
| 33362489 | + | Woodhaven Enterprises LLC, P.O. Box 716179, Cincinnati, OH 45271-6179 |

TOTAL: 39

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|
| 33362464 | Email/Text: bedgear-credit@bedgear.com | Nov 20 2026 19:24:00 | Bedgear LLC, 200 Sea Lane, Farmingdale, NY |

| | | | | |
|---|---|---|---|---|
| | | | | 11735 |
| 33362468 | | Email/Text: Bankruptcymail@marylandtaxes.gov | Nov 20 2026 19:23:00 | Comptroller of Maryland, 7 St Paul St, Baltimore, MD 21202 |
| 33362476 | + | Email/Text: sbse.cio.bnc.mail@irs.gov | Nov 20 2026 19:24:00 | Internal Revenue Service, PO Box 7346, Philadelphia, PA 19101-7346 |
| 33376130 | + | Email/Text: bankruptcy@simon.com | Nov 20 2026 19:25:00 | Outlet Village of Hagerstown Limited Partnership, c/o Simon Property Group, L.P., 225 West Washington Street, Indianapolis, IN 46204-3435 |
| 33362486 | + | Email/Text: arbankruptcy@uline.com | Nov 20 2026 19:25:00 | Uline Shipping Supplies, 12575 Uline Drive, Pleasant Prairie, WI 53158-3686 |
| 33362488 | + | Email/Text: thershey@washco-md.net | Nov 20 2026 19:25:00 | Washington County Treasurer, 35 West Washington Street, Suite 102, Hagerstown, MD 21740-4844 |
| 33362490 | + | Email/Text: jbeckman@yvslaw.com | Nov 20 2026 19:25:00 | YVS Law LLC, 185 Admiral Cochrane Drive, Suite 130, Annapolis, MD 21401-7582 |

TOTAL: 7

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| 33362467 | | CIT Group Commercial Services, INVALID ADDRESS PROVIDED |
| 33362482 | | Samir Abu Ajaj, INVALID ADDRESS PROVIDED |

TOTAL: 2 Undeliverable, 0 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Nov 22, 2026 Signature: /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on November 18, 2026 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Daniel M. Press | dan@danpress.us pressdm@gmail.com,danpress@recap.email |
| L. Jeanette Rice | Jeanette.Rice@usdoj.gov USTPRegion04.GB.ECF@USDOJ.GOV |
| Monique Desiree Almy | malmy@crowell.com cbest@crowell.com,malmy@ecf.axosfs.com,monique-almy-7127@ecf.pacerpro.com |
| Paul Sweeney | psweeney@yvslaw.com jbeckman@yvslaw.com,pgomez@yvslaw.com,cadams@yvslaw.com,sweeneypr39990@notify.bestcase.com,r39990@notify.bestcase.com,vmichaelides@yvslaw.com |

| | |
|---|---|
| Richard Kind | kinddash@kinddash.net |
| US Trustee - Greenbelt | USTPRegion04.GB.ECF@USDOJ.GOV |

TOTAL: 6

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

| | |
|---|---|
| In re: Kesa LLC<br><br>*Debtor.* | No. 26-19154-MCR<br><br>Chapter 11, Subchapter V |

**DEBTOR'S CHAPTER 11 PLAN DATED November 18, 2026**

**NOW COMES KESA LLC,** the Debtor in Possession, by Counsel, and hereby submits to creditors this Chapter 11 Plan pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.,* and the Small Business Reorganization Act ("SBRA"), 11 U.S.C. §§ 1181 *et seq.* (the "Plan").

A detailed discussion of the Plan and its implementation is found herein. The Debtor urges creditors and parties in interest to consult with counsel. Creditors and parties in interest should not rely on any representations not contained in the Plan in evaluating the Plan.

## ARTICLE I – DEFINITIONS AND RULES OF CONSTRUCTION

The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

1.1 ***"Administrative Bar Date"*** means the first Business Day thirty (30) days after the Confirmation Date and is the date by which all Administrative Claims must be filed with the Bankruptcy Court, other than claims for counsel, accountant, and Subchapter V Trustee fees and costs, except as otherwise provided in the Plan.

1.2 ***"Administrative Claim"*** means any cost or expense of administration of the Estate allowed under § 503(b) of the Bankruptcy Code, proof (or request or motion for payment or approval) of which is timely filed by the Administrative Bar Date.

1.3 ***"Allowed Claim"*** means a Claim against the Debtor(s): (a) which is listed in the Debtors' Schedules (as amended), other than a Disputed Claim or a Claim to which an objection has been interposed; or (b) proof of which has been timely filed and with respect to which no timely filed objection to the allowance thereof has been interposed, or (c) which has been allowed by the Court in a Final Order, but only in the amount allowed. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

1.4 ***"Assets"*** means all property, real or personal, in which Debtor has an interest.

1.5 ***"Avoidance Actions"*** means proceedings and causes of action of the Debtor under Chapter 5 of the Bankruptcy Code.

1.6 ***"Bankruptcy Code"*** or ***"Code"*** means Title 11 of the United States Code.

1.7 ***"Bankruptcy Court"*** or ***"Court"*** means the United States Bankruptcy Court for the District of Maryland, or, if such court ceases to exercise jurisdiction over the Case, the court or adjunct thereof that exercises jurisdiction over the Case.

1.8 ***"Bankruptcy Rules"*** or ***"Rules"*** means: (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, in either case, as now in effect or hereinafter amended (except that all time periods herein shall be calculated in accordance with the Bankruptcy Rules as in effect on the date hereof).

1.9 ***"Bar Date"*** means the date designated by the Bankruptcy Court as the last date for filing a proof of claim or proof of interest, as the case may be, against the Debtor. The Bar Date for the filing of pre-petition claims against the Debtor was October 29, 2026 (February 16, 2027 for governmental unit claims).

1.10 ***"Business Day"*** means any day except Saturday, Sunday, or other day on which commercial banks in the State of Maryland are authorized or required by law to close, or any other "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.11 ***"Case"*** means the case commenced by the Debtor under Chapter 11 of the Code pending in the Bankruptcy Court and bearing Case Number 26-19154-MCR.

1.12 ***"Cash"*** means United States currency, drafts, checks, deposit accounts, or other cash equivalents.

1.13 ***"Claim"*** means a claim as defined in § 101(5) of the Code.

1.14 ***"Claimant"*** means a Person holding a Claim against the Debtor(s).

1.15 ***"Class"*** means each class of Claims or Interests established and set forth in Article V of the Plan.

1.16 ***"Collateral"*** means any property or interest in property of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Code or applicable state law.

1.17 ***"Confirmation"*** means the entry of a Final Order of the Bankruptcy Court confirming the Plan.

1.18 ***"Confirmation Date"*** means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.19 ***"Confirmation Hearing"*** means the hearing under Code § 1128 scheduled by the Bankruptcy Court for consideration of Confirmation of the Plan, as it may be continued from time to time.

1.20 ***"Confirmation Order"*** means the order of the Bankruptcy Court confirming the Plan.

1.21 ***"Creditor"*** means the holder of a Claim.

1.22 ***"Days"*** shall be calculated in accordance with Rule 6 of the Federal Rules of Civil Procedure.

1.23 ***"Debtor" or "Debtors"*** means Kesa LLC.

1.24 ***"Disputed Claim"*** means a Claim:

(a) which is listed as disputed or contingent in the Debtor's Schedules as filed or as amended; or

(b) which is listed as disputed under any provision of this Plan, or

(c) as to which a proof of claim was timely filed and an objection to such Claim was filed within 30 days after the Effective Date.

1.25 ***"Effective Date"*** means the date that is thirty (30) days after the Confirmation Order becomes a Final Order.

1.26 ***"Equipment"*** means all machinery, tools, motor vehicles, furniture and fixtures, and all parts thereof and all accessions thereto and all software related thereto, including software that is embedded in and is part of said Equipment, so as not to include any Inventory.

1.27 ***[Reserved]***.

1.28 ***"Estate"*** means the bankruptcy estate of the Debtor.

1.29 ***"Executory Contracts"*** means all contracts, including unexpired leases, to which the Debtor is or was a party on the Petition Date and which were executory within the meaning of § 365 of the Code and which may be assumed or rejected by the Debtor.

1.30 ***"Final Decree"*** means the Final Order of the Bankruptcy Court that closes the Case.

1.31 ***"Final Order"*** means an order or judgment of the Bankruptcy Court as entered on the docket in the case, that has not been reversed, stayed, modified, or amended, and as to which, either: (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari

has been timely filed, or (ii) any appeal or petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed from or from which certiorari was sought.

1.32 ***"Inventory"*** means all goods held for sale or lease, including all raw materials, work in process, finished goods, and material used or consumed in the manufacture, production, preparation or shipping thereof, so as not to include any Equipment.

1.33 ***"Lien"*** has the meaning set forth in §101(37) of the Code.

1.34 ***"Material Default"*** of the Debtor shall occur if: (1) Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 14 Days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtor and Debtor's attorney a written notice of Debtor's default; and (3) Debtor fails within 30 Days after the date of receipt of the notice of default either: (i) to cure the default, or (ii) to obtain from the court or affected creditor an extension of time to cure the default, or a determination that no default occurred.

1.35 ***"Miscellaneous Assets"*** means Assets other than Real Property, Inventory, Equipment, Accounts Receivable, or Avoidance Actions.

1.36 ***"Person"*** means an individual, a corporation, an LLC, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government or any political subdivision thereof, or other legal entity.

1.37 ***"Petition Date"*** means August 20, 2026, the date on which the voluntary petition for relief under the Code was filed by the Debtor.

1.38 ***"Plan"*** means this Plan, as it may be amended from time to time.

1.39 ***"Priority Claim"*** means a Claim made pursuant to § 507(a) of the Code, other than an Administrative Claim, a Professional Claim, or a Priority Tax Claim.

1.40 ***"Priority Tax Claim"*** means any Allowed Claim for taxes, including without limitation, income, property, withholding, payroll, or excise taxes, or any penalty related to the foregoing to the extent such Claim is entitled to priority under § 507(a)(8) of the Code.

1.41 ***"Professional"*** means any attorney, accountant, appraiser, consultant, financial advisor or other professional retained or to be compensated pursuant to an order of the Bankruptcy Court entered under any provision of the Code, including the Subchapter V Trustee.

1.42 ***"Professional Claim"*** means any Claim for compensation or reimbursement of a Professional that will be paid through the Plan.

1.43 ***"Proof of Claim"*** means a proof of Claim filed pursuant to § 501 of the Code and Part III of the Bankruptcy Rules.

1.44 ***"Rejection Claim"*** means a Claim arising from the rejection of an executory contract or unexpired lease in such amounts as are permitted by the Code and applicable law, and as are allowed by the Bankruptcy Court.

1.45 ***"Schedules"*** means the schedules of assets and liabilities and Statement of Financial Affairs filed by the Debtor with the Bankruptcy Court and any amendments thereto.

1.46 ***"Secured Claim"*** means any Claim, debt, or demand against the Debtor as determined in accordance with § 506(a) of the Code that is secured by a properly perfected mortgage, deed of trust, Lien, pledge, or security interest in, or right of set off against, any Property of the Debtor, but only to the extent of the value of the Collateral as of the Confirmation Hearing or as otherwise expressly treated in the Plan.

1.47 "***Subchapter V Trustee"*** means Monique Desiree Almy, the appointed trustee under Code § 1183, or such successor trustee who is or shall be appointed.

1.48 ***"Unexpired Lease"*** means a lease of personal or real property that had neither expired by its terms nor been properly terminated as of the Petition Date, and which has not expired by its terms or been rejected by a Final Order on or prior to the Confirmation Date.

1.49 ***"Unliquidated Claim"*** means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise.

1.50 ***"Unsecured Claim"*** means any unsecured debt, demand, or Claim of whatever nature other than an Administrative Expense, a Professional Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, to the extent as determined and allowed by the Bankruptcy Court in accordance with § 502 of the Code.

## ARTICLE II - SUMMARY OF PLAN AND CONFIRMATION REQUIREMENTS

### A. *Repayment of Creditors*

The Plan provides for payment of administrative expenses, priority claims, and secured creditors in full, either in cash or in deferred cash payments, and provides for payments to unsecured creditors in an amount greater than they would receive in the event of a Chapter 7 liquidation. Funds for implementation of the Plan will be derived from the Debtor's operating income.

This document contains a detailed discussion of the Plan and its implementation. The Plan is a legal document and upon confirmation will become binding on the Parties. Creditors should read the Plan in its entirety, rather than relying on this summary. The Debtor urges creditors and other parties in interest to consult with independent counsel in connection with their analysis of the Plan.

### B. *Confirmation Requirements*

If all the applicable requirements of Code § 1129(a), other than paragraphs (8), (10), and (15) of that section, are met with respect to a Plan, the Court, on request of the Debtor, shall confirm the Plan notwithstanding the requirements of such paragraphs if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

In order to be confirmed (i.e., approved) by the Court, the Plan or its proponent must (among other requirements set forth in Code §§ 1129 and 1191):

a. Disclose all compensation paid or promised for professional services rendered or to be rendered in connection with the case;

b. Disclose the identity and affiliations of all officers to serve after the Plan is confirmed and the compensation of any insiders to be employed after Confirmation;

c. Propose to pay each member of an impaired class of Claimants who has not accepted the Plan property at least equal in value to what the Claimant would receive if the Debtors' assets were liquidated on the date of the Confirmation Hearing, and distributed to Creditors according to their rights and priorities under law;

d. Propose to pay all Administrative Claims in full;

e. Propose to pay all Priority Claims in full in deferred payments or cash;

f. Propose to pay all Priority Tax Claims in full within five years after the order for relief in this case, in a manner not less favorable than the non-priority unsecured claims.

The Code requires that the Court hold a Confirmation Hearing with notice to all Creditors. The Confirmation Hearing will be scheduled after filing this plan to be held before the

United States Bankruptcy Court for the District of Maryland, 6500 Cherrywood Lane, Greenbelt, Maryland 20770. The Confirmation Hearing may be held remotely or in person and may be adjourned or continued by the Court without further notice except for an announcement made of the adjourned or continued date made at the Confirmation Hearing.

At the Confirmation Hearing, the Court shall determine whether the requirements of the Code have been satisfied, in which event the Court shall enter a Confirmation Order confirming the Plan. To confirm the Plan, either all impaired classes of creditors must agree to accept the Plan (a "Consensual Plan"), or, in addition to the requirements stated *supra,* the Plan must not discriminate unfairly, and must be "fair and equitable".

A plan does not discriminate unfairly within the meaning of the Code if no Class receives more than it is legally entitled to receive for its Claims or Equity Interests. The Code establishes different "fair and equitable" standards for Secured and Unsecured Claims.

With respect to a Secured Claim, a plan may be "fair and equitable" if: (1) the impaired Secured Creditor retains its liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its liens; (2) property subject to the lien of the impaired Secured Creditor is sold free and clear of that lien, with that lien attaching to the proceeds of sale, and such lien proceeds must be treated in accordance with clauses (1) and (3) hereof, or (3) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the plan.

Additionally, as to all claims, to be "fair and equitable," the Plan must provide that, as of the Effective Date of the Plan, all of the Debtor's projected disposable income to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the Plan, will be applied to make payments under the Plan; or the value of the property to be distributed under the Plan in such period is not less than the projected disposable income of the Debtor.

"Projected Disposable Income" is defined as the income that is received by the Debtor and that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor.

The Debtor must show that it can make all payments under the Plan, or that there is a reasonable likelihood that the Debtor will be able to make all payments under the Plan and the Plan provides appropriate remedies to protect the holders of claims or interests if payments are not made.

## ARTICLE III - REQUISITE DISCLOSURES

A. ***Representations Limited***

NO REPRESENTATIONS CONCERNING THE DEBTOR, PARTICULARLY REGARDING FUTURE BUSINESS OPERATIONS OR THE VALUE OF THE DEBTOR'S ASSETS, HAVE BEEN AUTHORIZED BY THE DEBTOR EXCEPT AS SET FORTH IN THIS STATEMENT. YOU SHOULD NOT RELY ON ANY OTHER REPRESENTATIONS OR INDUCEMENTS PROFFERED TO YOU TO SECURE YOUR ACCEPTANCE OR REJECTION IN ARRIVING AT YOUR DECISION IN VOTING ON THE PLAN. ANY PERSON MAKING REPRESENTATIONS OR INDUCEMENTS CONCERNING ACCEPTANCE OR REJECTION OF THE PLAN SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR AT THE ADDRESS BELOW. FOR VARIOUS REASONS, THE RECORDS OF THE DEBTOR PRIOR TO PREPARATION OF THIS PLAN MAY NOT HAVE BEEN COMPLETE AND THE ACCURACY OF THE INFORMATION SUBMITTED WITH THIS STATEMENT IS DEPENDENT ON INFORMATION AVAILABLE TO THE DEBTOR WITH THE ASSISTANCE OF COUNSEL. WHILE REASONABLE EFFORTS HAVE BEEN MADE TO PROVIDE THE MOST ACCURATE INFORMATION AVAILABLE, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT ALL INFORMATION IS WITHOUT INACCURACY. THERE ARE NO KNOWN INACCURACIES. WHILE REASONABLE EFFORTS HAVE BEEN MADE TO ENSURE THAT THE ASSUMPTIONS ARE VALID AND AS ACCURATE AS CAN BE MADE UNDER THE CIRCUMSTANCES, NEITHER THE DEBTOR NOR THE DEBTOR'S ATTORNEYS UNDERTAKE TO CERTIFY OR WARRANT THE ABSOLUTE ACCURACY OF THE ASSUMPTIONS OR PROJECTIONS.

NO FORMAL APPRAISALS HAVE BEEN UNDERTAKEN OF THE DEBTOR'S PROPERTY EXCEPT WHERE STATED. THE VALUES PLACED THEREON AND SUMMARIZED BELOW ARE THE DEBTOR'S BEST ESTIMATE OF THE VALUE OF THE PROPERTY AS OF THE TIME OF THE FILING OF THE PLAN AND THIS DISCLOSURE STATEMENT. THESE VALUES MAY DIFFER FROM VALUES PLACED ON THE SAME PROPERTY AT THE TIME OF FILING OF THE PETITION FOR RELIEF AND THE SUBSEQUENT SCHEDULES.

***B. Brief history of Business Operations of the Debtor***

The Debtor is a Maryland LLC which since 2023 has operated a furniture store at what was known as the Hagerstown Premium Outlets. The mall operator/landlord breached the lease by failing to keep the mall in operation; meanwhile, Debtor fell behind on the rent, prompting the bankruptcy filing.

*C.* ***Events Leading to Bankruptcy***

The mall operator/landlord breached the lease by failing to keep the mall in operation; as a result, Debtor fell behind on the rent and some other debts, prompting the bankruptcy filing after the landlord filed a complaint in landlord-tenant court.

D. ***Procedural Posture of the Bankruptcy Case***

On August 20, 2026 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for reorganization relief under SBRA provisions of Chapter 11 of title 11 of the U.S. Code. The Debtor continues to hold the assets of the estate as Debtor-in-Possession pursuant to Code §§ 1107(a) and 1108. Monique D. Almy was appointed the Subchapter V Trustee herein.

Meanwhile, the Washington County Circuit Court entered a receivership order and appointed a receiver for the Landlord.

E. ***Assets***

The Debtors' principal assets are its inventory ($160,000 at cost as of the Petition Date); Cash and receivables (approximately $13,000); and furniture, fixtures and equipment (approximately $3000).

Debtor also has a prepayment and a security deposit with the Landlord (which are less than the Landlord claims is owed), and a claim for breach of the lease. However, it appears that the Landlord is insolvent and in receivership, so any claims against the Landlord that exceed any right to set-off or recoupment against the amounts due under the Lease are likely worthless.

As indicated in the Chapter 7 Liquidation Analysis found in Section IV, it is estimated that, were the Debtors' case filed under Chapter 7, there would be zero, or close to zero, available for distribution to general unsecured creditors after the payment of administrative and priority claims and the cost of liquidation.

The Debtor has a potential $15,000 preference claim against Hi-Rock Studios. It has not yet determined whether it makes economic sense to bring such claim. Other than its claim against the Landlord, it is presently unaware of other potential avoidance or other claims that it may bring.

F. ***Creditors Committee/Trustee***

The Court has not ordered the appointment of a Committee of Creditors pursuant to Code § 1102(a)(3). Monique D. Almy has been appointed as the Subchapter V Trustee pursuant to Code § 1183. No other trustee or examiner has been appointed.

G. ***Professionals***

The Debtor has retained the Law Offices of Daniel M. Press, which appointment has been approved by the Court.

Mr. Press expects to file a fee application for approximately an estimated total of $20,000 (provided there is no litigation with the landlord and no costly preference litigation) which is

subject to Court approval under Code § 330. That amount is estimated, and may change based on developments in the case.

Monique D. Almy was appointed as the Subchapter V Trustee. It is estimated that her total fees and costs will be approximately $10,000.00 (again, assuming no material involvement in disputes with the landlord), which are subject to Court approval under Code § 330.

H. ***Officers/Directors and Compensation***

The Debtor's Managing Member is Samir Abu-Ajaj. Mr. Abu-Ajaj will continue in his role post-confirmation. He receives an annual salary of $85,000, which is expected to continue.

## ARTICLE IV – ANALYSIS OF LIQUIDATION VALUE OF THE ESTATE

If liquidated under Chapter 7, the following is an analysis of what would be available to pay unsecured creditors.

Assets:

Real Property:

None

Personal property

Inventory $160,000 at cost. Net liquidation value estimated at $80,000.
Cash and receivables: $27,000 as of the end of October, 2026.
Non-inventory FF&E: $2800 (liquidation value virtually zero).

NET LIQUIDATION VALUE $107,000 before hypothetical Chapter 7 expenses

Less: Administrative claims: C11 Professionals $15,000 (after application of advances)
C7 Trustee commission on $127,000: $9600
C7 Trustee Professionals: $10,400
Total $35000

Less: Priority tax claims: $45,000 est. (tax claims have not been fully filed)
Less: $45,000+ administrative rent claims

Total net: Approximately $0.00.

After payment of priority and administrative claims, the distribution to unsecured creditors in a Chapter 7 liquidation would be zero or close to it. This plan proposes $135,000 in quarterly payments; plus the net proceeds from any avoidance claims, to general unsecured creditors.

## ARTICLE V – CLASSIFICATION AND TREATMENT OF CLAIMS

The Plan establishes 2 classes of claims (one has no claims at present), plus two categories of unclassified claims (for administrative expenses and priority taxes). The classes of claims are identified and treated as follows:

***A. Unclassified Claims***

1. *Administrative Expenses.* Pursuant to Code § 1191(e), Administrative Expense and Professional claims approved and allowed by the Court shall be paid in full upon the Effective Date, or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan. In the event Professional Claims exceed a net of $15,000 after application of deposits and advances, the remaining amounts shall be paid in quarterly payments of $15,000 until paid in full. Administrative claims that by their terms are not due and payable shall be paid when due. Administrative and Professional claims where all or a portion of awarded fees are being held by counsel in escrow may be paid upon allowance by the Court to the extent of such escrowed sums, with any balance to be paid as provided above.

The total professional fees to Debtor's counsel are estimated to be approximately $20,000.00, largely covered by the prepetition retainer. The Subchapter V Trustee's fees are estimated at approximately $10,000.00, largely covered by the monthly deposits being paid to the Trustee.

The Debtor is unaware of any other unpaid administrative expense claims other than rent, which shall be resolved pursuant to Article VII of this Plan.

2. *Priority Taxes*.

The Internal Revenue Service filed a priority claim (part of Claim No. 4) in the amount of $37,527.58. State taxes were scheduled at $1531.19. Local taxes are not yet determined or filed. Priority tax claims shall be paid in full with statutory interest in quarterly payments of $___ until paid, not to exceed 5 years from the Petition Date, starting upon completion of any quarterly Professional Claim payments under V.A.1 of this Plan.

***B. Classified Claims and Interests***

1. *Class A (Priority (non-tax) Claims)*: Class A consists of Priority Claims under 11 U.S.C. § 507 other than Administrative and Professional Claims and Priority Tax Claims. No such claims have been scheduled or filed. In the unlikely event that there are any allowed claims in Class A, they shall be paid in full, in cash, by the Debtor on the Effective Date of the Plan or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan. This class is not impaired.

2. *Class B (General Unsecured Claims).* Class B consists of all allowed general unsecured claims against the Debtor. The Class B claims shall receive the balance of the quarterly payments to be made over 3 years from the Effective Date by the Debtor, after payment of the unpaid balance of the Priority Tax Claims and any quarterly Professional Claims. In addition, the net proceeds (after attorney's fees and costs) of any avoidance claims shall be paid pro rata to Class B. This class is impaired.

***As to All Claims***

The right to object to all claims is reserved. The payment on any claims which are then subject to objections as to which a Final Order has not been entered shall be deposited in the undersigned counsel's attorney trust account (or an interest bearing account if over $20,000) until a Final Order is entered, and shall be paid to the creditor, distributed to the holders of other allowed claims, or refunded to the Debtor, as appropriate, upon entry of such a Final Order. Payments on claims shall be mailed to the address of the creditor on the proof of claim (or, if allowed pursuant to the schedules, to the address on the schedules), unless the creditor files a change of address notice with the Court. No distribution shall be made on any claim until the cumulative distribution on that claim equals at least $20.00, except that the final distribution to any class shall distribute all remaining funds due to each creditor unless they are less than the cost of a first class postage stamp. Any check mailed to the proper address and returned by the post office as undeliverable, refused by the creditor, or not deposited within 180 days, shall be void and the funds may be retained by the Debtor. Nothing herein shall constitute a waiver of the Debtor's right to object to any claim or an acknowledgement that such claim is valid or allowable.

## ARTICLE VI - IMPLEMENTATION OF PLAN

Funds for implementation of the Plan will be derived from the Debtor's income from operating its furniture store business, and if economically feasible, from pursuing an avoidance action.

This plan is dependent on a reduction in the rent charged by the Landlord and a waiver of the pre-petition claim, which Debtor is proposing as a compromise of the claim for breach of the lease, and to allow for a viable lease going forwards.

From its disposable income, the Debtors shall make payments first to the balance of Administrative/Professional Claims, then Priority Tax Claims and then to Class B (General Unsecured) claims. The payments shall be in the amount of $15,000/quarter for 12 quarters. The first quarterly payment shall be made three months after the Effective Date of the Plan, with subsequent payments being made every three months thereafter for 12 quarters.

In addition, if determined to be economically viable, Debtor will pursue a $15,000 preference claim against Hi Rock studios, and the net recovery after the costs and fees of such proceeding will be paid to unsecured creditors.

The Debtor's projected income and expenses are as follows:

Gross income, per month:

January - $140,000
February - $170,000
March - $190,000
April - $200,000
May - $200,000
June - $200,000
July - $200,000
August - $160,000
September - $180,000
October - $200,000
November - $200,000
December - $160,000
Total - $2,200,000

Expenses (annualized)

Cost of Goods (gross profit 45% of sales): $1,210,000
Gross Profit: $990,000

Payroll: $240,000
Utilities: $70,000
Insurance: $10,000
Delivery/Vehicles $70,000
Taxes: $40,000
Advertising/Promotion: $180,000
Rent: $240,000 (based on reduction proposed herein)
Other Expenses (Legal, accounting, software, banks, etc.) $80,000

Total: $930,000

NET DISPOSABLE INCOME: $60,000/YR.
$15,000/QUARTER

.

The expected net distribution is as follows:

$180,000 TOTAL ($15,000 x 12 quarters)

Administrative Expenses: $0.00 (estimated to be paid in full on Effective Date)
Priority Taxes: $45,000 (first 3 quarters)
Class B: $135,000 (9 quarters)

Total unsecured claims: $300,000 approx. (Government bar date has not passed)

Distribution to unsecured creditors: Approximately 45%

B. The Debtor shall retain the Assets of the estate (except as otherwise provided in this Plan) and shall therewith operate its business and pay ordinary business expenses while paying creditors the amounts set forth in this Plan. Consistent with the provisions of this Plan and subject to any releases provided for herein, the Debtor reserves the right to begin or continue any adversary proceeding permitted under the Code and Rules to collect any debts, or to pursue its claims in any court of competent jurisdiction. Except as expressly provided for in this Plan, nothing in this Plan shall be deemed to constitute a waiver of any claim that the Debtor may assert against any other party, including the holder of any claim provided for in this Plan, and the allowance of any claim against the Debtor or the estate shall not bar any claim by the Debtor against the holder of such claim.

## ARTICLE VII – EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Debtor shall assume its non-residential real property lease for its business premises under the following terms:

1. Prepetition claim is waived.
2. Rent reduced to $20,000/month from November 2026, plus a percentage rent for any calendar quarter in which gross sales exceed $660,000, at 10% of any excess over $660,000.

Any other prepetition Executory Contracts and Leases in effect as of the Effective Date and not specifically rejected, assumed, or assumed and assigned will be deemed rejected as of the Effective Date. Any Claims arising from the rejection of Contracts and Leases must be filed on or before the Rejection Claim Bar Date. The Rejection Claim Bar Date is 30 days after the Confirmation Date. Absent the filing of a proof of claim on or before the Rejection Claim Bar Date, all Rejection Claims shall be forever barred from assertion and shall not be enforceable against the

Debtor, or the Debtor's Estate, Assets, or properties. All Rejection Claims shall be Class K General Unsecured Claims.

\

## ARTICLE VIII – RETENTION OF JURISDICTION

Following the Confirmation Date, the Court shall retain jurisdiction over the Debtors and the Debtors' operations for the following purposes until the Court enters an Order closing the case:

A. To rule on the allowance or classification of claims and to hear any objections thereto. The failure of the Debtor to object to, or to examine any claim for the purposes of voting shall not be deemed a waiver of the Debtor's right to object to such claim in whole or in part;

B. To hear and determine all adversary proceedings and contested matters;

C. To allow and approve or disapprove any administrative expenses not previously allowed;

D. To determine and resolve questions concerning the existence of defaults under the Plan;

E. To modify the Plan pursuant to Code § 1193;

F. To correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan; and

G. To issue any Order necessary to carry out the Plan.

Notwithstanding the foregoing, the Confirmation Order shall entitle the Debtors to manage the Debtors' financial affairs, including the sale, disposition, or lease of assets, without further Order of the Court, and shall permit the Debtors, in the Debtors' discretion, to obtain new and additional credit and/or loans from any source, which credit or loans may be secured by the Debtors' assets, without further Order of the Court.

## ARTICLE IX – MODIFICATION OR WITHDRAWALS OF PLAN

The Debtor may alter, amend, or modify the Plan under Code § 1193 at any time before the Confirmation Date, so long as the Plan, as modified, meets the requirements of Code §§ 1122 and 1123, with the exception of subsection (a)(8) of § 1123. Following the Confirmation Date but before the Effective Date, the Debtor may also alter, amend, or modify the Plan under Code § 1193. The Debtor may revoke or withdraw the Plan before the Confirmation Date. If the Plan is revoked or withdrawn before the Confirmation Date, the Plan shall be of no force or effect, and

shall be deemed null and void. If the Plan is revoked or withdrawn before the Confirmation Date, nothing contained herein shall in any way effect or prejudice the rights of the Debtors with regard to Claims, Avoidance Actions, or any other rights or interests. After confirmation, the plan may be modified pursuant to Code § 1193.

## ARTICLE X – MISCELLANEOUS PLAN PROVISIONS

The Debtor shall act as disbursing agent to make the required distributions under the Plan.

No creditor may take any collection action against Debtor or property of the estate or of the Debtor on any Claim or debt scheduled or provided for under this Plan so long as Debtor is not in Material Default in performing its obligations to such creditor under the Plan.

On the Effective Date, all property of the estate will vest in the reorganized Debtor pursuant to § 1141(b) of the Code free and clear of all claims and interests except as provided in this Plan.

Except as specifically provided in this Plan, the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under Maryland law. To the extent a creditor retains a lien under the Plan, except as provided in this Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

Date: November 18, 2026

Respectfully submitted,

_/s/ Daniel M. Press_____________

Daniel M. Press, #07300
Law Offices of Daniel M. Press
201 Washington St.
Cumberland MD 21502
(703) 725-7600
dan@danpress.us

## CERTIFICATE OF SERVICE

This is to certify that on this 18th day of November, 2026, I caused the foregoing document be served on all creditors and parties in interest, as set forth on the attached matrix, by first class mail, postage prepaid, and upon the following by CM/ECF:

Monique Desiree Almy malmy@crowell.com, cbest@crowell.com, malmy@ecf.axosfs.com, monique-almy-7127@ecf.pacerpro.com

L. Jeanette Rice Jeanette.Rice@usdoj.gov, USTPRegion04.GB.ECF@USDOJ.GOV

Paul Sweeney psweeney@yvslaw.com, jbeckman@yvslaw.com, pgomez@yvslaw.com, cadams@yvslaw.com, sweeneypr39990@notify.bestcase.com, r39990@notify.bestcase.com, vmichaelides@yvslaw.com

US Trustee - Greenbelt USTPRegion04.GB.ECF@USDOJ.GOV

_/s/ Daniel M. Press_____________
Daniel M. Press